UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In Re: | § § | |
| | § | Case No. 20-34049-EVR-11 |
| MURPHY SHIPPING & | § | |
| COMMERCIAL SERVICES, INC. | § | |
| DBA MURPHY GLOBAL | § | |
| LOGISTICS | § | Chapter 11 |
| | § | |
| *Debtor* | § | |

**DEBTOR'S SUBCHAPTER V CHATER 11 STATUS
CONFERENCE STATEMENT**

1. On August 14, 2020, (the "Petition Date") a Murphy Shipping & Commercial Services, Inc., DBA Murphy Global Logistics, (the "Debtor") filed its petition for relief under Chapter 11, title 11.[Dkt. #1]

2. On August 23, 2020, this Court entered its Order Chapter 11 Subchapter V Status Conference to be filed on or before five (5) days before a status conference, scheduled for September 1, 2020, or not later than Thursday, August 27, 2020. [Dkt. 9]

3. Debtor's Combined Plan and Disclosure Statement (the "Plan") was filed that same date. [Dkts. 1&2]. The Debtor is the proponent of this Plan within the meaning of Section 1129 of the Bankruptcy Code under Subdivision V of Chapter 11, title 11. The combined disclosure statement was provided at the option of the Debtor for additional information to its creditors, that while not required under Chapter V , will assist the creditors in determining whether to consent or dissent from the Plan. Whether creditors do assent or dissent, as disclosed, will not, however, be determinative of whether the Plan may yet be

confirmed over dissenting creditors.

4. The Order Required the following information

> **a. The efforts Debtor has undertaken and will undertake to attain a consensual reorganization plan.**

5. As aforementioned, a plan of reorganization was filed on the date the petition was filed. Debtor will work with the creditors and equity holders directly and/or through their representatives to seek a consensual support of the Plan, albeit consent is no longer a requirement of at least one impaired class under Chapter V of Chapter 11 as long as the plan meets other requirements with respect to disposable income and/or its equivalent.

> **b. Any complications the debtor anticipates in promptly proposing and confirming a plan, including any need for discovery, valuation, motion practice, claim adjudication, or adversary proceeding litigation.**

6. As aforementioned, the Debtor has already proposed its plan filed on the petition date [Dkts.# 1&2]. The Debtor is requesting a setting for hearing on confirmation for late September 2020 to provide the requisite 30-days' notice for balloting and hearing on adequacy of disclosure, combined with the confirmation hearing. The Debtor foresees no need for discovery, motion practice, claim adjudication, or adversary proceeding litigation at this time. If minority shareholders do not consent to the terms of the purchase of their minority equity interest, a valuation hearing may be required under hypothetical liquidation test, unless the Court accepts the Debtor's argument that under Chapter V they are not entitled to hypothetical liquidation, and are only entitled to their pro rata share of actual net disposable income if it exceeds estimated actual net disposable income factored into the plan payment for the equity interest.

### c. Outline of the Plan

7. Debtor shall, as Reorganized Debtor, continue to exist after the Effective Date as a legal entity organized in the State of Texas without any prejudice to any right to alter or terminate such existence under applicable state law.

8. This Plan provides no payment to secured creditors because there are none. The priority claims to the taxing authorities, if any, will also be paid in full in five years. However, Debtor's balance sheets show a current asset of potential overpayment for income tax. There are thus no income tax payments.

9. Unsecured creditors with claims of professional fees (approximately $45,000) and trade accounts (approximately $90,000) will be paid 50% of their claims in one single lump sum payment to be made within 180 days of the Effective Date. They will be provided the difference, if any, in actual net disposable income if actual net disposable income is greater than their pro rata share of estimated net disposable income.

10. Unsecured Creditors with claims based on contingent derivative claims against the Debtor (valued at zero due to expiration of applicable statutes of limitations to bring such claims) shall be paid $10,000.00 with respect to these claims. Their allocable share of net disposable income is zero.

11. The same Unsecured Creditors with respect to their 40% equity interest shall be satisfied for their 40% equity interest in the Reorganized Debtor under the stock purchase agreement for $115,000, paid $65,000 on the Effective Date and $50,000 in a note payable in one year from the Effective Date with interest at prime rate on the Effective Date, If circumstances allow, Debtor may make

earlier payments. They will be provided the difference, if any, in actual net disposable income if actual net disposable income is greater than their pro rata share of estimated net disposable income.

12. In accordance with section 1123(a)(1) of the Bankruptcy Code, administrative expense claims and priority tax claims have not been classified and thus are excluded from the classes of claims and equity interests described above. Administrative claims are the claims allowed under § 503(b) of the Bankruptcy Code for administration of these bankruptcy cases.

13. All final requests for payment of professional fee claims for services rendered and reimbursement of expenses incurred prior to the Confirmation Date must be filed no later than 90 days after the Effective Date. Retained Professionals shall provide the Debtor with a reasonable and good faith estimate of their unpaid fees and expenses incurred in rendering services to the Debtor before and as of the Confirmation Date projected to be outstanding as of the anticipated Effective Date and shall provide such estimate no later than five Business Days prior to the anticipated Effective Date. If the Retained Professional does not provide an estimate, Debtor may estimate the amount of unpaid and unbilled fees and expenses. The total estimated amount shall be deposited into the Retained Professional's trust account at least two Business Days prior to the Effective Date. The funds held in the trust account shall be the property of the estates of the Debtor or Reorganized Debtor. When all professional fee claims allowed by the Bankruptcy Court have been paid in full pursuant to one or more final orders of the Bankruptcy Court, any remaining

funds held in trust shall be turned over to the Reorganized Debtor without any further notice to or action, order, or approval of the Bankruptcy Court or any other entity. Alternatively, under SBRA, the Debtor may propose annual installment payments over the three (3) year term of the Plan.

14. Holders of Administrative Claims may include, without limitation, Wiley Law Group PLLC for professional fees in the estimated amount of $25,000; CPA fees of the court appointed certified public accountant, if any, and attorney's fees for any required representation of the Debtor in probate proceedings by court appointed special counsel.

15. After the Effective Date, any requirement that Retained Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Reorganized Debtor may employ and pay any Retained Professional in the ordinary course of business without any further notice, to or action, order, or approval of, the Bankruptcy Court, should any services be rendered.

16. All Statutory Fees that become due and payable prior to the Effective Date shall be paid by the Debtor within thirty (30) days after the Effective Date. After the Effective Date, the Reorganized Debtor shall pay any and all such fees when due and payable and file any reports as applicable. The Reorganized Debtor shall remain obligated to pay the quarterly fees to the United States Trustee until the Chapter 11 cases are converted, dismissed, or a final decree is issued, whichever occurs first.

17. Except to the extent that a holder of an Allowed Claim of the type

described in §507(a)(8) of the Bankruptcy Code has been paid prior to the Effective Date or agrees to a less favorable treatment, in full and final satisfaction compromise, settlement, release, discharge of, and in exchange for, each such Allowed Claim and each Holder of such Allowed Claim shall be treated in accordance with the terms set forth in 1129(a)(9)(C) of the Bankruptcy Code and shall receive annual Cash payments commencing on the first anniversary of the Effective Date to pay the aggregate amount of such Claim within five years of the Petition Date. However, the Debtor and Reorganized Debtor shall have the right to pay any such priority tax claim, or any remaining balance, in full, at the time on or after the Effective Date, without premium or penalty. All priority tax claims that are not due and payable on or before the Effective Date shall be paid in the ordinary course of business as such obligations become due. The total estimated priority tax claims for Debtor are $19,143.00 to Harris County.

18. The plan will cancel debt by the estate of Ronald R. Johns to the Debtor due to lack of collectability, due to, e.g. homestead and personal property exemptions, and the desire to avoid ordinary income treatment to the estate from cancellation outside of bankruptcy. A quid pro quo for this cancellation would be the cessation of litigation in the probate court to seek to remove the current executor of the estate named in the will in a fight to control the Debtor. The plan proposes a voting trust where the executor, who is also trustee of the trust holding the bulk of assets in the estate, including the Debtor, will exert control of 100% of the voting stock for the benefit of the estate beneficiary, the spouse of the deceased founder and mother of the executor/trustee. The plan also enjoins

interference with the plan by continuation of probate proceedings challenging control.

### d. Summary Overview of the Debtor, Primary Place of Business, Nature of the Debtor's Business, Number of Locations, Number of Employees and Goals of the Reorganization Plan

**i. Murphy Global Logistics**

19. Murphy Shipping & Commercial Services (Nigeria) ("Murphy Nigeria") was formed in Lagos in 1975. Further offices opened in Port Harcourt (1977) and Warri (1978). Murphy Nigeria began life as a specialist Customs' Broker, but, because of the demands of Nigeria's oil & gas sector, soon expanded by adding many other services to its repertoire. It has a total of 14 employees and contractors.

20. Murphy Shipping & Commercial Services, Inc., DBA Murphy Global Logistics, a Texas corporation, the Debtor affiliate of Murphy Nigeria, was founded by Mr. Johns and five investors in 1996 to partner with Murphy Nigeria to act as Murphy Nigeria's U.S. shipping arm. The owners/founders consisted of Mr. Johns, now deceased, as an owner of Murphy Nigeria, and four of Murphy's employees. The current ownership of the Company is shown on the chart below.

| SHAREHOLDERS | SHARES | % OWNERSHIP |
|---|---|---|
| DAVID R. JOHNS, EXECUTOR OF RONALD R. JOHNS, SR., DECEASED | 600 | 60% |
| BOLAJI AGBABIAKA | 200 | 20% |
| LINDA WILKINSON | 50 | 5.0% |
| CHARLES ADAMS, EXECUTOR OF THE ESTATE OF JUNE ADAMS | 50 | 5.0% |
| JERALD HARRIS | 50 | 5.0% |

| RANDY YATES, ATTORNEY-IN-FACT FOR SHERRY WINSMANN | 50 | 5.0% |
|---|---|---|
|  |  |  |
| TOTAL | 1000 | 100.00% |

21. Mr. Ronald R. Johns, Sr. now deceased, and wife, Luanne Johns, jointly owned 60% of the Company's shares as community Property. Under the terms of the Ronald R. Johns will, ½ of this interest was conveyed to the Luanne Elizabeth Johns Trust with the sole beneficiary being wife, Luanne Johns. The other ½ was left as the community interest of Luanne Johns. After issuance of letters testamentary, under Texas Estates Code §453.009Mr. David R. Johns, as Executor, has exercised the voting rights of the entire 60% under applicable Texas probate law to administer the Estate under the terms of the will of Mr. Ronald R. Johns, Sr.[1]

---

[1] Texas Estates Code § 453.009. Distribution of Powers Between Personal Representative and Surviving Spouse

(a)  A qualified personal representative of a deceased spouse's estate may administer:

(1)  the separate property of the deceased spouse;

(2)  the community property that was by law under the management of the deceased spouse during the marriage;  and

(3)  the community property that was by law under the joint control of the spouses during the marriage.

(b)  The surviving spouse, as surviving partner of the marital partnership, is entitled to:

(1)  retain possession and control of the community property that was legally under the sole management of the surviving spouse during the marriage;  and

(2)  exercise over that property any power this chapter authorizes the surviving spouse to exercise if there is no administration pending on the deceased spouse's estate.

22. Per Article VII of the Articles of Incorporation, each shareholder is also a member of the Board of Directors.  However, under the terms of a special shareholder meeting, dated November 29, 2018, the sole directors of the Company are Mr.  David R. Johns; Linda Wilkinson, and Jerald Harris. Mr. David R. Johns was elected by these directors  as CEO and President. Subsequent to this meeting, on December 14, 2018, these directors voted that David Johns had the ability to change and remove directors without further board consent. The current directors on the petition date are thus  David Johns, Jerry Rowell, and Jeff Novak. This Board has also delegated the real powers of CEO/President to Mr. Jerry Rowell.

**ii. Services**

23. Murphy offers logistical support for door-to-door, courier, direct airfreight, consolidated airfreight, and ocean freight service to anywhere in the world.

24. Through its relationship with Murphy Nigeria, Murphy has developed expert knowledge of the Nigerian and Caspian markets, including Azerbaijan and Kazakhstan. Murphy has extensive, "on-the-ground" experience meeting the Nigerian and Caspian requirements for local customs clearance and hazardous materials handling.  In addition, on-site support in these areas can help ensure a seamless transition through customs for drilling and exploration equipment, and all other valuable cargo.

---

(c)  The surviving spouse, by written instrument filed with the clerk, may waive any right to exercise powers as community survivor.   If the surviving spouse files a waiver under this subsection, the deceased spouse's personal representative may administer the entire community estate.

25. Murphy offers comprehensive cargo shipping and freight forwarding services using all modes of transportation. Murphy provides complete logistical support through each phase of the export process, from receiving the material to delivery of the goods to its final destination. Murphy offers door-to-door service from the premises of the shipper to the premises of the consignee, even in some of the most difficult areas of the world where petroleum companies operate.

26. Murphy operates under various Agency Agreements for services hired from abroad. All agents are held to contract under strict FCPA compliance agreements and auditing. All third- party service providers are vetted per their quality of service, reliability, available lanes, service history, and by costs. Only third - party providers that have high marks passing Murphy's service and reliability requirements are hired.

**iii.  Market and Customers.**

27. Historically, about 95% of Murphy's shipments are of oil and gas equipment into Nigeria. The vast majority of Murphy's customers are in the oil and gas business. In the past, Murphy's clients have included Exxon Mobil, Schlumberger, Addax Petroleum, Halliburton, Noble Drilling and others in the oil and gas industry.

28. After a 10-year increase in oil prices from 1998 to early 2008, oil prices declined sharply through the end of 2008. After recovering to some extent through the middle of 2014, oil prices again plummeted through July 2020 to historic lows, exacerbated by the downturn in business activity occasioned by the Covera-19 Virus Pandemic. This trend has continued, with some modest upward

price movement still reflecting the global downturn. During these downturns, some of the major oil and gas companies as well as service companies merged or went out of business. Noble Drilling was Murphy's primary customer until it spun out its offshore division, Paragon Offshore, in 2014. The Company was doing business with Paragon, but Paragon's business was not as large as Noble's business. Paragon went bankrupt in 2016. The Company's current largest customers are Pacific Drilling and FW Bender. According to the compiled financial statements, as of the fiscal year ended December 31, 2019, the Company had five major customers and sales to each of these customers exceeded 5% of the Company's total sales. The Company's customer base is highly concentrated and is not diversified. The loss of any one customer could further impair the Company's financial results.

29. During the downturn, many of the Company's customers began using much larger freight forwarders that could offer more favorable pricing, but less personalized service. Thus, markups on freight declined from the range of 15% to 30% to a range of 3% to 5%. The large freight forwarders do not offer the level of personal customer service that small companies like Murphy can offer. The Company expects customers to begin using the smaller freight forwarders again as the oil and gas market stabilizes.

**iv. Events Leading to the Chapter 11 Filings**

30. The decline in oil prices from over $100 per barrel in mid-2014 and down to mid-$30 per barrel in 2020 and remaining well below mid-$30 per barrel to below cost of production up until the Petition Date significantly affected the

demand for Debtor's export/import services, thereby lowering revenue and causing financial strain. With drop in revenue, the Debtor took all feasible steps to substantially reduce the monthly cash losses. The cost reduction activities included reducing employees, relocating to a smaller and cheaper facility, and increased gross margins by decreasing direct cost.

31. After the death of the founder, Ronald R. Johns, Sr., on February 17, 2018, the major creditors of the Debtor are insiders that hold contingent, disputed, and unliquidated potential derivative claims against the Debtor with respect to transfers made by the said Ronald R. Johns, Sr. that were arguably and potentially personal and thus arguably not for the sole benefit of the Debtor. The only other debt owed by the Debtor includes professional claims for attorneys, CPA's, consultants, and other professionals that have been employed by the Debtor prior to the filing of the petition, and modest trade creditors.

32. The Debtor filed this Chapter 11 case with the primary goal of restructuring the outstanding debt represented by the potential derivative claims, trade, and professional claims and continuing forward as an ongoing concern. A secondary goal is to enjoin interference with the orderly liquidation of the estate by harassing lawsuits filed by certain beneficiaries of the estate that challenge David R. Johns authority to act as executor of the estate, and necessarily with that office control the Debtor. A third goal is to cancel debt deemed uncollectable against the estate without creation of ordinary income for the estate.

      **e. Any Motion the Debtor Contemplates Filing or Expects to File Prior To Confirmation**

33. None and none anticipated.

      **f.  Any Objections to Claims or Interest the Debtor Expects to File Before Confirmation and Any Potential Needs to Estimate Claims for Voting Purposes.**

34. None and none anticipated.

      **g.  The Business, Financial, and Other Problems That Prompted the Filing of this Case.**

35. See par. 30-32 above.

      **h.  Attendance at a First Meeting of Creditors**

36. Same is scheduled for September 22, 2020 at 1:00 p.m.

      **i.  Estate's Need for Professionals**

37. The estate has retained Wiley Law Group, PLLC for general counsel. The application for appointment was filed on August 14, 2020, with 14-day negative notice [Dkt. #4]and pending conclusion of the notice period on August 28, 2020 to request the entry of the proposed order appointing counsel.[Dkt. #5]. The estate may need to retain separate probate counsel to seek abatement of probate proceedings pending the outcome of this case.

      **j.  Whether the Debtor is Current on Filing Income Tax Returns**

38. The debtor is current through 2018. The 2019 is due per extension in October 2020.

      **k.  Unique Issues Concerning Secured Debt, Employees, Cash Collateral, Executory Contracts and Existing Management.**

39. See summary of plan above for unique issues on management and the control issue. No other unique issues exist.

      **l.  Post-Petition Operations and Revenues**.

40. See the 90-day forecast of operations part of the IDI Report attached as **Exhibit A.**

      **m.  Status of Litigation Pending Inside or Outside of this Court.**

41. See **Exhibit B** for Plea in Abatement to abate removal proceedings of the executor that has voting control of 30% of the Debtor, with the other 30% voting control as trustee of the trust above described**. These removal proceedings are pending the probate court per Exhibit B.**

    **n.  Compliance with Request for Information from the United States Trustee, including but not limited to request in the Initial Debtor Interview**

42. See **Exhibit A** for complete IDI package. There is no other request for information pending at this time.

    **o.  Type and Adequacy of Insurance Coverage**

43. See Commercial General Liability Coverage, $1 million/$2 million aggregate listed as Exhibit to the IDI Report attached hereto as **Exhibit A.**

    **p.  DIP Bank Account**

44. See Cancelled DIP check listed as Exhibit to the IDI Report attached hereto as **Exhibit A.**

    **q.  Any Other Matters That Might Materially Affect the Administration of This Case.**

45. Debtor's counsel has no knowledge at this time of any such material matter.

Respectfully Submitted this the 24th day of August 2020.

    /s/ Kevin S. Wiley, Sr.
    WILEY LAW GROUP, PLLC
    325 N. ST. Paul Street, STE. 2250
    DALLAS, TEXAS 75201
    SBOT# 21470700
    (214) 537-9572 (PHONE)
    (972) 449-5717 (FAX)
    kwiley@wileylawgroup.com

**CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the above and foregoing Chapter 11 Subchapter V Status Conference Report has been served on the Chapter V Trustee, and the Office of the United States Trustee by email, and by ECF electronic filing to all parties requesting electronic service, this the 24th day of August, 2020.

    /s/Kevin S. Wiley, Sr.